**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,                          Case No. 25-cr-67 (PJS/SGE)

        Plaintiff,

v.

                              **REPORT & RECOMMENDATION**

William Michael Haslach,

        Defendant.

Carla J. Baumel, United States Attorney's Office, counsel for the Government.

Justin J. Duffy, Law Office of John J. Leunig, counsel for Defendant.

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a report and recommendation on Defendant William Michael Haslach's Motion to Suppress (Dkt. 32) and Motion to Dismiss (Dkt. 34). A hearing was held on October 1, 2025. (Dkt. 42.) Assistant United States Attorney Carla Baumel appeared on behalf of the United States of America. Attorney Justin Duffy appeared on behalf of Mr. Haslach, who was present. After the hearing, the parties submitted supplemental briefs. (Dkts. 46, 47.) The Court took the motions under advisement on November 19, 2025. For the reasons that follow, this Court recommends that Defendant's Motions be denied.

## I.    BACKGROUND

### A.  Procedural History

At the hearing, the Court heard testimony from Maplewood Police Detective Olaf Mark. (Tr. 5-55, Dkt. 45.) The Government offered, and the Court received, Government Exhibits 1, 2 and 3. (Gov't Exs. 1, 2, 3.) Government Exhibit 1 is an Application for Search Warrant and Search Warrant dated January 15, 2025. Government Exhibit 2 is an email exchange between Detective Mark and the chambers of Ramsey County District Court Judge Jennifer Verdeja. Government Exhibit 3 is a series of 6 photographs of XXXX Century Avenue, N., Maplewood, MN 55119, an interior hallway, and the door to Apartment XX at the same address. The evidence and testimony presented at the hearing established the following facts.

### B.  Facts

On January 2, 2025, Detective Olaf Mark received a CyberTip from the Minnesota Bureau of Criminal Apprehension ("BCA"), which was sent to him via the Internet Crimes Against Children data systems internet portal. (Tr. 9.) The federally mandated CyberTip came from Dropbox, an online file storage and sharing server, and indicated that a resident of Maplewood possessed and sent child sexual abuse/assault materials ("CSAM"). (Tr. 9-10.) Dropbox flagged two video files of suspected CSAM. (Tr. 12.) Detective Mark viewed the files and determined that they both contained obvious CSAM. (Tr. 12.)

When the BCA first received the CyberTip from Dropbox, they gathered additional information before sending the tip to Detective Mark. (Tr. 10.) The BCA's investigation on the CyberTip revealed that the Dropbox account was assigned to a specific email that

registered to Mr. Haslach. (Tr. 10-11.) The BCA further concluded that the IP address associated with the Dropbox account was assigned to K.R., Mr. Haslach's wife. (Tr. 11.) And the IP address linked to a Comcast account, which showed a billing address of XXXX Century Avenue, Apartment XX, in Maplewood, Minnesota (the "Century Avenue Address"), the same address on Mr. Haslach's driver's license issued on November 5, 2024. (Gov't Ex. 1, 15 of 18; Tr. 11-12.)

Relying on this information, Detective Mark requested a search warrant for the contents of the Dropbox profile on January 13, 2025, and simultaneously began investigating Mr. Haslach. (Tr. 13-14.) Detective Mark learned that Mr. Haslach was an employee of Independent School District 622, a job which gave him significant access to children, and Detective Mark began monitoring and surveilling Mr. Haslach at school and at home. (Tr. 14-15.)

On January 15, 2025, Detective Mark drafted a search warrant for the Century Avenue Address, Mr. Haslach, and his vehicle. (Tr. 16; Gov't Ex. 1.) Ramsey County District Judge Verdeja signed the warrant at 11:00 a.m. on January 15, 2025. (Gov't Ex. 1; Tr. 26.) Before executing the search warrant, law enforcement developed an operational plan for its execution. (Tr. 21.) As part of this planning, Detective Mark scouted the Century Avenue Address and the associated apartment complex. (Tr. 21-24; *see also* Gov't Ex. 3.) Law enforcement photographed the exterior of the apartment complex, as well as interior hallways and the exterior door of Mr. Haslach's apartment. (Tr. 23-24.)

On the morning of January 16, 2025, Mr. Haslach exited his apartment building about 7:00 a.m. and had just unlocked his car when two officers approached him and took

3

him into custody. (Tr. 27.) The officers took possession of a cell phone and apartment keys found on Mr. Haslach. (Tr. 27.) Officers then performed a knock-and-announce at the door of the Century Avenue Address and executed the search warrant. (Tr. 27-28.) During the search, officers seized electronic devices, numerous photographs of children, and a box labeled "Bill's Keepsakes." (Tr. 28.)

Approximately 30 to 45 minutes after his arrest, Detective Mark provided Mr. Haslach with a *Miranda* warning and interviewed him. (Tr. 33.) Mr. Haslach waived his *Miranda* rights and made statements in response to direct questions from Detective Mark. (Tr. 29-31.) The next day, Mr. Haslach called his mother from jail and made additional statements to her. (Tr. 31-32.)

On January 17, 2025, law enforcement received the information they sought from the Dropbox warrant. (Tr. 19.) Dropbox sent four folders which contained numerous photos of children. (Tr. 19.) Detective Mark reviewed the contents of the folders and found multiple files that were CSAM or CSAM-related. (Tr. 19.) He also saw other files that were not, in his estimation, CSAM, but suspected they were photos of real children. (Tr. 20.)

On January 21, 2025, a few days after law enforcement executed the search warrant, Detective Mark discovered that the apartment number of the Century Avenue Address did not appear in a segment of the warrant. (Tr. 37; Gov't Ex. 1.) Specifically, the property listed under "Premises" in the search warrant did not include the apartment number investigators had connected to Mr. Haslach. (Gov't Ex. 1, 1 of 4.) The full Century Avenue Address, including the accurate apartment number, appeared later in the search warrant and the warrant affidavit. (Gov't Ex. 1, 2 of 18; *id.*, 2 of 4.) As an explanation of how the

apartment number was left off the first page of the warrant, Detective Mark testified that the omission was unintentional and that software that law enforcement uses to submit warrants "has a tendency to strip portions of addresses," and "in particular, [it] does not like apartments" and does not handle them correctly. (Tr. 38-39, 43-44.) Detective Mark emailed Ramsey County Judge Verdeja and requested permission to submit an amended warrant for her signature to more accurately portray the actual apartment searched. (Tr. 37; Gov't Ex. 2.) Judge Verdeja declined to sign the updated warrant "given that the first one had been executed." (Gov't Ex. 2.)

## II.    MR. HASLACH'S MOTION TO DISMISS

Mr. Haslach moves to dismiss Count I of the superseding indictment, arguing "there is insufficient evidence to support a finding of probable cause for that charge given the circumstances, characteristics and nature of the particular photograph that the Government has stated that allegation is based on." (Dkt. 46 at 4.) He further argues that this Court should conduct a *Rayl* review to determine as a matter of law whether the particular photograph depicts sexually explicit conduct.[1] (*See id.*, citing *United States v. Rayl*, 270

---

[1] "Sexually explicit conduct," as relevant here, includes the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. §§ 2251(a), 2256(2)(A)(v). The Eighth Circuit determines whether something is a "lascivious exhibition" by referencing the factors from *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Weigand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987). *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011). The *Dost* factors include: "(1) whether the focal point of the picture is on the minor's genitals or pubic area; (2) whether the setting of the picture is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended

F.3d 709 (8th Cir. 2001)). The government argues that Mr. Haslach essentially mounts a premature sufficiency-of-the-evidence challenge, and that even if the Court conducted a *Rayl* review, the motion should be denied.

In *United States v. Rayl*, the Eighth Circuit affirmed the defendant's conviction of four federal child pornography offenses. The defendant argued, in part, that a large volume of materials the government entered into evidence was not child pornography as defined by the statute because it did not depict "lascivious exhibition of the genitals." *Id.* at 714. The Eighth Circuit held that whether materials depict lascivious exhibition of the genitals is an element of the crime and, therefore, an issue for the finder of fact, but that "*the meaning* of 'lascivious exhibition of the genitals' is an issue of law." *Id.* (citing *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000) (emphasis added)). Concerned with the admission into evidence of "a large volume of materials" that were not child pornography, but were "prurient," the court added:

> Because the issue raises First Amendment concerns, and because of the potential prejudice in allowing the government to introduce and submit to the jury a large volume of materials that are prurient but non-obscene along with a few materials that could properly be found to be child pornography, we think the district court should conduct a preliminary review of whether materials offered by the government for this purpose depict sexually explicit conduct as a matter of law.

*Id.* The Eighth Circuit's holding does not require district courts conduct a preliminary review of all potential evidence to determine whether it depicts sexually explicit conduct

---

to elicit a sexual response in the viewer." *Johnson*, 639 F.3d at 439. The Eighth Circuit also considers "(7) whether the image portrays the minor as a sexual object; and (8) any captions on the images." *United States v. Lohse*, 797 F.3d 515, 520 (8th Cir. 2015).

as a matter of law. Instead, the *Rayl* decision instructed that a review would have been appropriate to ensure that the jury based its determination on only images that depicted sexually explicit conduct. *Id.*

Mr. Haslach asks the Court to review a single image and the sole basis for Count 1 of the indictment to determine if it depicts a "lascivious exhibition of the genitals." But a *Rayl* review would not be appropriate at this stage of the proceedings for multiple reasons. First, for a charge of *attempted* production of child pornography under 18 U.S.C. §§ 2251 (a) and (e), the issue is not whether the image depicts a "lascivious exhibition of the genitals." Jurors will have to determine whether Mr. Haslach used—or intended to use and took a substantial step toward using—a minor to engage in "sexually explicit conduct." 18 U.S.C. § 2251(a); *see also United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010). The question for the jury will be whether Mr. Haslach intended to capture a lascivious exhibition of genitals when he took the picture. *See Petroske*, 2018 WL 672505 at *2. The charged crime concerns not the final picture, but Mr. Haslach's intent and actions.

Second, a review of *Rayl* and cases from this district relying on it leads this Court to conclude that the review it contemplates is best suited for a motion *in limine* before the District Court Judge who will be making admissibility determinations based upon the Federal Rules of Evidence. The *Rayl* court did not specify when the district court should conduct the review it contemplated, nor did it recommend that district courts address the issue on a pretrial motion to dismiss.

The Court takes guidance from cases in this district that have undertaken *Rayl* review. The court in *United States v. Mayer*, Case no. 19-cv-96 (WMW/HB) (D. Minn.),

addressed a request for a *Rayl* review as a pretrial motion *in limine*. *See* 2021 WL 2434121, at *9 (D. Minn. June 15, 2021). Similarly, in *United States v. Petroske*, Case no. 17-cr-116 (PJS/LIB), the defendant filed a motion *in limine* seeking an order that, as a matter of law, "none of the eight videos for which he was convicted included a lascivious exhibition of the genitals of a minor." 2018 WL 672505, at *2 (D. Minn. Feb. 2, 2018). After a careful review, Judge Schiltz found that although "the videos identified in Counts One, Three, Five, Six, and Eight either did not exhibit genitals at all or exhibited genitals so fleetingly that a reasonable jury could not find the exhibition to be lascivious," "the Court could not rule out the possibility that [the defendant] had *intended* to capture a lascivious exhibition of genitals when he recorded the videos underlying those five counts." *Id.* Accordingly, Judge Schiltz allowed those counts to proceed only on the attempted-production charges. *Id.*

Additionally, in this case, the grand jury issued the indictment on Count I and determined that sufficient evidence existed to support the charge. And an attack on the sufficiency of the evidence is improper at this time. *See, e.g.*, *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001) (an indictment is not open to challenge on the grounds of sufficiency of the evidence; sufficiency can be challenged in a motion for acquittal under Rule 29). "It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury." *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing *Costello v. United States*, 350 U.S. 359, 363-64 (1956)).

Considering the above, the Court determines that a *Rayl* review at this stage in the proceedings would be inappropriate and the Court recommends denying Mr. Haslach's motion to dismiss as well as his request for a *Rayl* review.

### III.   MR. HASLACH'S MOTION TO SUPPRESS

Mr. Haslach also moves to suppress evidence obtained as a result of the search warrant of his home, vehicle, and person. Mr. Haslach argues that the warrant lacked particularity and was overbroad and facially invalid because it did not include a specific apartment number. (Dkt. 46 at 16-23.) He further argues that the warrant lacked probable cause because there was not sufficient information that Mr. Haslach still resided at the Century Avenue Address when officers applied for and executed the warrant. (Dkt. 46 at 24-25.)

### A.  Motion to Suppress for Warrant Particularity

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. amend. IV. To comport with the Fourth Amendment, a search warrant must be based on a showing of probable cause, which exists when the supporting affidavit "sets forth sufficient facts to establish a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Darr*, 661 F.3d 375, 380 (8th Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

9

"A search warrant must contain a description of the place to be search in order to comply with" the particularity requirement of the Fourth Amendment. *United States v. Curry*, 911 F.2d 72, 76 (8th Cir. 1990) (cleaned up). The warrant need only be sufficiently definite to enable the searching officers "to locate and identify the premises with reasonable effort" and identify the property to be seized. *United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001) (quotations omitted); *see also United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *Summage*, 481 F.3d at 1079 (cleaned up). Thus, reviewing courts do not resolve particularity issues "in a vacuum." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). Rather courts look to "such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Id.* In other words, the degree of particularity required under the Fourth Amendment is flexible and may vary depending on the circumstances and the type of items involved. *Horn*, 187 F.3d at 788.

"Multiple circuit courts have held that to satisfy the particularity requirement when a search involves a building with multiple, separate residency units, the warrant must specify the precise unit that is the subject of the search." *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007) (citing *United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005)); *cf. United States v. Gill*, 623 F.2d 540, 544 (8th Cir. 1980) ("Federal courts have long held that police officers, before they constitutionally may search a separate residential unit within an apartment building, must have probable cause to do so that is specifically related to that unit.") (quotations omitted). However, "[t]here is also authority for the proposition

10

that a warrant to search a multi-unit dwelling is valid if it specifies the name of the occupant of the apartment against which it is directed, despite the absence of any physical description of the particular apartment." *Perez*, 484 F.3d at 741 n.5 (citing *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975)).

Mr. Haslach argues that the search warrant was not valid because, although it listed the Century Avenue Address as the premises to be searched, it failed to include the specific apartment number. True, the first page of the warrant fails to include the apartment number as part of the premises to be searched. (*See* Gov't Ex. 1, p. 1 of 4[2].) On the second page of the search warrant, however, Mr. Haslach's address includes the apartment number. (*See* Gov't Ex. 1, p. 2 of 4.) This conflict "creates at most an inconsistency." *United States v. Deans*, 549 F. Supp. 2d 1085, 1097 (D. Minn. 2008). The Eighth Circuit has held that "[t]o satisfy the particularity requirement, the place to be searched must be described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort and to avoid mistakenly searching the wrong premises." *United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001) (cleaned up).

This inconsistency here did not confuse the officers executing the warrant. The warrant application identified the specific apartment number as the unit that investigators linked to Mr. Haslach. (Gov't Ex. 1.) Officers also confirmed that the address from the CyberTip linked to the Century Avenue Address, confirmed that Mr. Haslach had a vehicle registration associated with the Century Avenue Address, confirmed that Mr. Haslach's

---

[2] This pagination mirrors the pagination on the bottom right-hand corner of Government Exhibit 1.

driver's license listed his residence as the Century Avenue Address, and photographed both the exterior of the building and the door to the appropriate apartment. *Cf. United States v. Gamboa*, 439 F.3d 796, 806 (8th Cir. 2006) (upholding validity of search pursuant to warrant that specified incorrect apartment number where the executing officers "had conducted extensive surveillance of the premises before the warrant was executed, . . . had personal knowledge of the premises that they intended to search, and the premises that they intended to search were, in fact, searched").

Ultimately, officers surveilled the premises, identified the specific apartment to be searched, had knowledge of the building and the specific apartment, and searched the premises that they intended to search. Based on the foregoing, the Court determines that the warrant satisfied the particularity requirement.

### B. Motion to Suppress for Lack of Probable Cause

Mr. Haslach also challenges the warrant as lacking probable cause sufficient to establish that Mr. Haslach still lived at the Century Avenue Address. The Government argues that a four corners review of the warrant affidavit establishes probable cause.

"If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Grant*, 490 F.3d 627, 631-32 (8th Cir. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge should be paid great deference by reviewing

courts." *Grant*, 490 F.3d at 632. An affidavit for a search warrant "should be examined using a common sense approach, and not a hypertechnical one." *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) (citing *Grant*, 490 F.3d at 632).

A four corners review of the warrant affidavit demonstrates that probable cause existed to issue the warrant. After receiving a CyberTip from Dropbox in December 2024, law enforcement began investigating the identity of an individual uploading videos containing CSAM using an identified email address and a specific IP address. Further investigation led law enforcement to associate the IP address with the Century Avenue Address and the email address with Mr. Haslach. Further investigation also found a recently issued driver's license listing the Century Avenue Address as Mr. Haslach's residence. Viewing these facts contained within the warrant affidavit, this Court concludes that there was probable cause to issue the warrant. "Probable cause requires a showing only of fair probability, not hard certainty." *Hudspeth*, 525 F.3d at 676. The facts set forth in the warrant affidavit demonstrate a fair probability of finding evidence of a crime in the Century Avenue Address. Accordingly, the search warrant is valid. *See United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (search warrant that establishes probable cause is valid).

### C. The Leon "Good-Faith" Exception

Under *United States v. Leon*, 468 U.S. 897 (1984), "disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *Grant*, 490 F.3d at 632 (citing *Leon*). "In assessing whether the officer relied in

good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit, and we confine our inquiry to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Grant*, 490 F.3d at 632.

Based on the totality of the circumstances, the warrant affidavit contained sufficient indicia of probable cause to support law enforcement's belief that the warrant was not facially invalid. The warrant affidavit set forth (1) the contents of CSAM files associated with an IP address traced to the Century Avenue Address, (2) a recently issued driver's license listing the Century Avenue Address as Mr. Haslach's address, and (3) a connection between the identified email address and Mr. Haslach. Mr. Halsach's argument that there were insufficient facts connecting him to the Century Avenue Address at the time of the search is unpersuasive. The warrant affidavit pointed to Mr. Halsach's driver's license that had been issued just two months prior. (*See* Gov't Ex. 1 at 15 of 18.)

Furthermore, officers confirmed the information that their investigation turned up. Detective Mark surveilled the Century Avenue Address and observed Mr. Haslach and his vehicle coming and going from the apartment complex. Officers also identified and photographed the specific apartment door before executing the search warrant, which weighs against officers potentially searching the wrong residence. *See United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (totality of the circumstances includes information not presented to the judge but known to the officers). The officers' reliance on the judge's

determination of probable cause was objectively reasonable. Accordingly, the Court recommends denying Mr. Halsach's motion.

### D. Fruit of the Poisonous Tree

Finally, Mr. Haslach argues that any statements that he made during or as a result of the execution of the search warrant should be suppressed as fruit of the poisonous tree. (Dkt. 46 at 26-27.) But because this Court finds that the search warrant and search were supported by probable cause and was constitutionally proper, Mr. Haslach's later statements should not be suppressed as fruit of the poisonous tree.

The fruit-of-the-poisonous-tree doctrine excludes evidence obtained "directly or indirectly through the exploitation of police illegality." *United States v. Simpson*, 439 F.3d 490, 493 (8th Cir. 2006). The evidence should be excluded if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007). To invoke this rule and demonstrate that evidence is the fruit of an illegal search or seizure, "the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007). If the defendant provides specific evidence demonstrating that the evidence is tainted by the constitutional violation, the burden shifts to the government to show the evidence was not obtained by the exploitation of that illegality, but rather by means "sufficiently distinguishable to be purged of the primary taint." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (cleaned up).

Mr. Haslach does not challenge his arrest nor argue that his *Miranda* waiver was somehow defective. The only purported violation that he identifies is the "unconstitutional

15

search and seizure conducted pursuant to the facially invalid warrant." (Dkt. 46 at 27.) As determined above, the search and seizure were not constitutionally defective and the search warrant was not facially invalid. Accordingly, the fruit-of-the-poisonous-tree doctrine does not apply, and Mr. Haslach's statements should not be suppressed.

## IV.   RECOMMENDATION

For the reasons stated above, and based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Haslach's Motion to Suppress Tangible Evidence (Dkt. 32) and Motion to Dismiss (Dkt. 34) both be denied.


Dated: December 19, 2025

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order of judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).